**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KENNETH T. WASHINGTON,**

    **Petitioner,**           **CASE NO. 2:12-CV-00103**
                               **JUDGE EDMUND A. SARGUS, JR.**
    **v.**                       **MAGISTRATE JUDGE ELIZABETH P. DEAVERS**

**TIM BUCHANAN, WARDEN,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant motion, Respondent's *Motion to Dismiss,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* (Doc. 8) be **GRANTED** and that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d).

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Franklin County Grand Jury indicted appellant on one count of aggravated murder and murder, two counts of attempted aggravated murder and felonious assault, and three counts of aggravated robbery and kidnapping. Each count contained a firearm specification. The charges alleged that appellant aided and abetted Allen Keith Jones to commit crimes against Rick Bruce, Marcus Bruce, and Sherman Adams on September 26, 2008. Appellant pleaded not guilty, and a jury trial ensued.
>
> Marcus Bruce testified as follows for plaintiff-appellee, the state of Ohio ("appellee"). Marcus and Rick are brothers, and Marcus and Adams are cousins. On September 26, 2008, Marcus, Rick, and Adams walked to a gas station around 3:00 a.m. to buy a cigar. Marcus saw appellant, Jones, and Jonathan Palmer at the gas station.

Appellant shook Rick's hand. Appellant tried to shake Marcus' hand, but Marcus rebuffed him. Marcus suspected appellant of breaking into his apartment, and appellant previously punched Marcus after he confronted appellant about the break-in. Rick told appellant that Marcus was not being disrespectful and that he just did not want to shake hands. Jones said, "that's why my n_____ knock both y'all out." (Vol. I Tr. 73.) Marcus interpreted this as a reference to his previous fight with appellant. Appellant grabbed a gun from the hood of a car. Marcus identified State's Exhibit E15 as the gun appellant retrieved. Appellant put the gun in the waistband of his pants. Appellant said, "y'all talking about clearing n_____ out." (Vol. I Tr. 77.)

Marcus, Rick, and Adams left the gas station and walked toward Marcus' home. Jones and appellant approached them from behind. Jones and appellant were a couple feet apart; Jones came from their left and appellant from their right. Jones and appellant arrived about the same time, and Jones brandished a gun. Jones and appellant were wearing black hoodies. Marcus testified that State's Exhibit E16 resembled one of those hoodies. Jones said, "get on the ground." (Vol. I Tr. 82.) Marcus thought Jones was speaking to him, and Marcus raised his hands. Rick, Adams, and appellant just stood there. Jones picked Marcus' pockets and kept saying "get on the ground." (Vol. I Tr. 83.) Marcus remained standing with his hands up, and Jones punched him. Jones "kept telling us to get on the ground and we just stood there and I kept repeating we don't have shit, we ain't got shit. I kept saying that ." (Vol. I Tr. 84.) Appellant said, "shoot that n_____, bro." (Vol. I Tr. 84.) Marcus, Rick, and Adams lay on the ground. Jones shot Marcus and Adams in the legs, and Jones shot Rick three times. Jones and appellant fled.

On cross-examination, Marcus testified that appellant wore a black hoodie at the gas station, but he conceded that the gas station surveillance video depicted appellant wearing a black shirt, and not a hoodie. The video did not show anyone with a gun. The video showed that the car that appellant approached had its lights on, and the lights went off after appellant approached it. There were "gaps" in the surveillance video, and the video was "[c]hoppy." (Vol. I Tr. 129-30.)

Adams testified as follows. Marcus, Rick, and Adams went to a gas station during the early morning hours of September 26, 2008. Adams saw appellant, Jones, and Palmer at the gas station. Adams first testified that nothing unusual happened at the gas station, but

2

later Adams clarified that appellant grabbed a gun from the hood of a car. Marcus, Rick, and Adams left the station and walked toward the Bruces' home. Appellant and Jones approached the three on the way. The three had been walking on the left side of the street and switched to the right side when appellant and Jones approached. Appellant and Jones approached at about the same time, and they were wearing black hoodies. Jones had a gun and "told us to get on the ground. And when he did it he said Marcus' name." (Vol. I Tr. 138.) Appellant and Jones picked Marcus' pockets and threw Marcus' cell phone. Appellant punched Marcus. Appellant said, "kill that n_____." (Vol. I Tr. 140.) Jones shot Marcus and Adams, and Jones shot Rick three times. Jones and appellant fled.

On cross-examination, Adams clarified that appellant said, "kill them n_____." (Vol. I Tr. 157.) Adams said that he, Marcus, and Rick were on the ground at the time. Adams confirmed that the gas station surveillance video did not depict appellant with a gun, and Adams said that appellant wore a hoodie at the gas station.

Ron Simmons lived in the neighborhood of the shooting and testified as follows. After Simmons heard the shooting, he looked out a window and saw two men wearing dark clothing running across the street. After the men left his line of sight, he heard a car speed away.

Tami Lang lived in the neighborhood of the shooting and testified as follows. Lang awoke to several young men arguing in her neighbor's front yard. Lang opened her door and the men saw her. Lang shut the door and heard the men cross the street. Afterward, Lang heard gunshots. On cross-examination, Lang testified that the argument occurred to the right of her house and the shooting occurred to the left of her house.

Jeffrey Payne lived in the neighborhood of the shooting and testified as follows. Payne heard yelling followed by several gunshots. Payne looked out the window and saw two men; one man said, "don't run, take your shirts off, take your shirts off." (Vol. III Tr. 371.) The men took off their hoodies and walked away. The men left Payne's line of sight, and Payne went to his door and saw one of the men in a car speeding away. Payne assumed the other man was lying back in the car "or not being visible." (Vol. III Tr. 381.) On cross-examination, Payne admitted that he previously wrote in a statement to police that the men he saw after the shooting were wearing black T-shirts, and Payne admitted that he said in a recorded interview with police that the men were wearing black T-shirts. Payne explained, "I think that

3

was just the way I was calling the hoodies. I was calling them T-shirts." (Vol. III Tr. 406.) Payne indicated that he was having difficulty communicating his thoughts to the police.

Medic Jeffrey Jahn testified that he pronounced Rick dead at the shooting scene. Photo journalist Jonathan Edwards testified that he went to the scene after the shooting, around 4:00 a.m. Edwards said that he found a gun near the area of the shooting, and he informed the police. Detective Lawrence Bisutti confirmed that a gun, State's Exhibit E15, was found near the shooting, and that police also found a hoodie, State's Exhibit E16, near the area. Fingerprint expert Rhonda Cadwallader testified that appellant's thumbprint was on the magazine of the gun found near the shooting scene. Deborah Lambourne, from the Columbus Police Crime Lab, excluded appellant and Jones as contributors to DNA found on the gun. Lambourne explained that she found a "mixture" of DNA on the gun. (Vol. III Tr. 530.) Lambourne concluded that Jones' DNA was on State's Exhibit E16, the hoodie.

The prosecution rested its case. Appellant moved for a Crim.R. 29 acquittal, and the court denied the motion.

Appellant testified as follows. Appellant was with Palmer and Jones at a gas station during the early morning hours of September 26, 2008. Jones drove to the station. Appellant wore a black T-shirt. Appellant shook Rick's hand and reached out to shake Marcus' hand. Marcus became aggressive and rebuffed appellant. Marcus repeatedly said "it gonna be a 187 tonight." (Vol. IV Tr. 620.) Appellant interpreted this as a reference to murder, and appellant considered this to be a threat. Appellant went to the hood of the car he was riding in to "cut the lights off." (Vol. IV Tr. 619.) Ultimately, appellant, Jones, and Palmer left the gas station. Jones was driving.

Jones dropped off Palmer and stopped in front of a bus stop. Appellant and Jones saw Marcus, Rick, and Adams. Jones wanted to see what they were doing, but appellant said "it was a waste of time." (Vol. IV Tr. 630.) Jones got out of the car. Appellant followed shortly afterward, thinking he should make sure everything was alright. Appellant approached the group and saw Marcus "getting up or bending over * * * and * * * get back up." (Vol. IV Tr. 631.) Appellant saw Rick and Adams stand beside Marcus. Jones had a gun, and appellant heard shots. Appellant fled and heard more shots. Jones ran to the car and picked up appellant. Appellant testified that at no time did he instruct Jones to do anything before the shooting.

4

> Appellant testified that he surrendered to police upon learning that he was a suspect in the shooting. He admitted that Marcus accused him of breaking into his home, but appellant denied the accusation. Appellant admitted that he punched Marcus and Rick after Marcus confronted him about the break-in.
>
> Appellant rested and renewed his Crim.R. 29 acquittal motion. The court denied the motion.
>
> When the court gave its jury instructions, it told the jury that it could consider whether appellant was guilty for being complicit in the shooting incident. The jury found appellant guilty of one count of murder, one count of aggravated robbery, two counts of felonious assault, and three counts of kidnapping, and the jury found appellant guilty of the firearm specifications attached to these counts. The jury found appellant not guilty of the remaining offenses and specifications. The court merged the three kidnapping counts into the murder, felonious assault, and aggravated robbery counts, and the court sentenced appellant to prison.

*State v. Washington*, No. 09AP-424, 2009 WL 4862067, at *1-4 (Ohio App. 10th Dist. Dec. 17, 2009). Petitioner filed a timely appeal, asserting as his sole assignment of error that the evidence was constitutionally insufficient to sustain his convictions and that his convictions were against the manifest weight of the evidence. *See id.*, at *4. On December 17, 2009, the Ohio Tenth District Court of appeals affirmed the judgment of the trial court. *Id*. Petitioner apparently did not file an appeal to the Ohio Supreme Court.

On March 17, 2010, he filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied effective assistance of appellate counsel because his attorney failed to raise on appeal an issue that the sentencing entry was void; trial counsel improperly failed to request that the firearm specifications be merged; the trial court improperly failed to merge the aggravated robbery and felonious assault charges; and improper imposition of consecutive sentence. *See Exhibit 9 to Motion to Dismiss*. On October 21, 2010, the appellate court

5

denied Petitioner's Rule 26(B) application. *Exhibit 12 to Motion to Dismiss*. On February 2, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal as not involving any substantial constitutional question. *Exhibit 16 to Motion to Dismiss*.

On January 23, 2012, Petitioner filed a motion for leave to file a delayed motion for new trial based on newly discovered evidence. *Exhibit 17 to Motion to Dismiss*. Petitioner's motion apparently remains pending in the state trial court.

On February 1, 2012, Petitioner filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] He alleges that he is in the custody of the Respondent in violation of the Constitution based upon the following grounds:

> 1. The trial court erred when it entered judgment against the defendant as to Count Two, Five, Six, Eight, Ten, Eleven, and Twelve and the associated specifications to those counts of the indictment when there was insufficient evidence to sustain those convictions and they are against the manifest weight of the evidence, in violation of defendant-appellant's rights to due process of law and a fair trial guaranteed by the Amendments V and XIV of the United States Constitution and Article1I, Section 10 of the Ohio Constitution.
>
> 2. Appellate Counsel was ineffective for failing to assign the following error:
>
>    The trial court's sentencing entry is void because it failed to impose post release control on the convictions with defined sentences, or, alternatively, Am.Sub. H.B. 137 (R.C. 2929.14(F)(1) is unconstitutional as applied to Mr. Washington).
>
> 3. Appellate Counsel was ineffective for failing to

---

[1] Petitioner presented these claims for relief in his August 3, 2012, *Supplement in Support,* Doc. 17.

> assign the following error:
>
> The trial court erred by imposing more than a six-year sentence on the firearm specifications.

4. Appellate Counsel was ineffective for failing to assign the following error:

    > The trial court erred by failing to merge the felonious assault charge and the aggravated robbery charge, or, alternatively, the trial court erred by not applying the correct test to determine whether the two offenses merged.

5. Appellate Counsel was ineffective for failing to assign the following error:

    > The trial court erred by imposing consecutive sentences without making the mandatory findings under R.C. 2929.14(E)(4). *Oregon v. Ice* (2009), – U.S. –, 129 S.Ct. 711.

It is the position of the Respondent that this action must be dismissed as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d).

## STATUTE OF LIMITATIONS

A one-year statute of limitations applies to the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, Petitioner's judgment of conviction became final on January 31, 2010, forty five days after the appellate court's December 17, 2009, denial of his direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. *See Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001). The statute of limitations ran for a period of forty-five days, until March 17, 2010, when Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Petitioner's Rule 26(B) application tolled the running of the statute of limitations the time period during which it was pending, until February 2, 2011, when the Ohio Supreme Court dismissed Petitioner's Rule 26(B) appeal. The statute of limitations then began to run again, and expired 320 days later, on December 19, 2011. Petitioner waited until February 1, 2012, to file his habeas corpus petition. He indicates that he executed the petition on January 25, 2012. His January 23, 2012, delayed motion for a new trial has no effect on the running of the statute of limitations, since Petitioner failed to file this motion until the statute of limitations had already expired.

Petitioner nonetheless contends that equitable tolling of the statute of limitations is appropriate because he is a *pro se* litigant with no knowledge or understanding of the law who has difficulty reading and understanding legal words and concepts. Petitioner states that he relied on

inaccurate advice from the Office of the Ohio Public Defender indicating that he had until February 1, 2012, to file his habeas corpus petition. In support of this allegation, Petitioner has attached a letter dated May 31, 2011, from the Office of the Public Defender indicating in relevant part "I do not believe that your case will be successful in collateral federal habeas corpus review. Notwithstanding, I have enclosed a set of pro se federal habeas corpus forms for you to use, should you wish to file on your own behalf. You should be aware. . . you must file a habeas corpus petition in the federal courts no later than February 1, 2012, and I would strongly advise you to file well in advance of this date." *See* Doc. 22.

The statute of limitations is not jurisdictional and is subject to equitable tolling. *See Holland v. Florida*, – U.S. –, 130 S.Ct. 2549, 2560 (2010). The United States Supreme Court has held that a petitioner is entitled to equitable tolling of the statute of limitations only if he shows he has diligently pursued his rights and that some "'extraordinary circumstance stood in his way'" and prevented him from timely filing. *Holland,* 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Federal courts grant equitable tolling "sparingly." *See Robertson v. Simpson,* 624 F.3d 781, 783 (6th Cir. 2010)(citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560 (6th Cir. 2000)). Petitioner carries the burden to establish he is entitled to equitable tolling of the statute of limitations. *Id.* (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)). The United States Court of Appeals for the Sixth Circuit requires this Court to consider the following factors when determining whether equitable tolling of the statute of limitations is appropriate: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing rights; 4) reasonableness in remaining ignorant of the legal requirement for filing his claim. *Sherwood v. Prelesnik*, 579 F.3d 581, 588

(2009); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). The record fails to support Petitioner's argument that equitable tolling of the statute of limitations is appropriate.

Neither Petitioner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling of the statute of limitations. *See Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 464 (6th Cir. 2012)(noting that a litigant's pro se status and lack of knowledge of the law are not sufficient to demonstrate an extraordinary circumstance to excuse a late filing). Moreover, "[g]enerally, a habeas petitioner's reliance on unreasonable or incorrect legal advice from his attorney is not a valid ground for equitable tolling of the statute of limitation." *Brown v. Bauman*, No. 2:10-cv-264, 2012 WL 1229397, at *9 (W.D. Mich. April 12, 2012)(citations omitted.). "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 336-37(2007)(citation omitted). A "garden variety" claim of excusable neglect, such as the miscalculation that causes an attorney to miss a filing deadline does not warrant equitable tolling of the statute of limitations, although egregious misconduct by counsel may constitute an extraordinary circumstance warranting equitable tolling. *Holland, v*130 S.Ct. at 2564 (citations omitted).

Petitioner does not allege, nor does the record reflect, any egregious misconduct on the part of the Ohio Public Defender. Moreover, the record likewise fails to reflect that Petitioner's difficulty reading or understanding legal concepts prevented him from timely filing his habeas corpus petition. **WHEREUPON**, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* (Doc. 8) be **GRANTED** and that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d).

**PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/ Elizabeth A. Preston Deavers  
Elizabeth A. Preston Deavers  
United States Magistrate Judge